**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| R. WAYNE KLEIN, as Court Appointed Receiver for U.S. Ventures LC, Winsome Investment Trust, and the Assets of Robert H. Andres and Robert L. Holloway,<br><br>                    Plaintiff,<br><br>vs.<br><br>WILLIAM T. CORNELIUS, and CORNELIUS & SAHAB,<br><br>                    Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>**Case No.  2:11CV1159DAK**<br><br>**Judge Dale A. Kimball** |

This matter is before the court on Defendants William Cornelius and Cornelius & Salhab's "Motion to Dismiss for Lack of Jurisdiction over the Subject Matter, for Lack of Jurisdiction Over the Persons of Defendants, and for Failure to State a Claim Upon Which Relief Can Be Granted, and, in the Alternative, to Transfer for Improper Venue."   The court held a hearing on the motion on May 30, 2012.  At the hearing, Defendants were represented by Berry Dunbar Bowen and Todd E. Zenger, and Plaintiff was represented by David C. Castleberry and Aaron C. Garrett.  After hearing argument from counsel, the court took the matter under advisement.  The court has considered carefully the memoranda submitted by the parties as well as the law and facts relating to the motion.  Now being fully advised, the court renders the following Memorandum Decision and Order.

**BACKGROUND**

On January 24, 2011, the Commodity Futures Trading Commission ("CFTC") initiated a lawsuit in this District against U.S. Ventures, Winsome Investment Trust, Robert J. Andres, and Robert L. Holloway, alleging that the defendants were operating a fraudulent commodity investment program ("CFTC Action").   The CFTC Action is ongoing and is assigned to the Honorable Bruce Jenkins, Case No. 2:11-CV-99BSJ.  In the CFTC Action, the CFTC asked the court to appoint a receiver over the affairs of Winsome Investment Trust, US Ventures, and the assets of Robert Andres and Robert L. Holloway.  Judge Jenkins appointed R. Wayne Klein as Receiver on January 25, 2011.  The Receiver investigated the affairs of Winsome Investment Trust and US Ventures and determined that both companies operated as Ponzi schemes.

In this action, Plaintiff R. Wayne Klein, as receiver for U.S. Ventures, Winsome Investment Trust, and the assets of Robert J. Andres and Robert L. Holloway, seeks to recover funds from William Cornelius, who is a criminal defense attorney in Texas, and Cornelius' law firm, Cornelius & Salhab.  In 2006, Robert J. Andres referred one of his associates, Jerome Carter, to Cornelius & Salhab for representation in an unrelated criminal matter against Carter in New Hampshire.  Between September 2006 and July 2007, Robert J. Andres wired payment for the representation to Cornelius & Salhab from a bank account in the name of Winsome Trust. The Receiver's Complaint alleges that Winsome Investment Trust received no benefit in return for those payments.

Cornelius and his firm do not practice law in Utah and do not target clients in Utah. Neither has any property or other contacts with Utah.  All of Defendants' contacts with Robert Andres occurred in Houston, Texas.  Mr. Andres had referred clients to Cornelius on one or two

other occasions, but Cornelius had no other relationship with Andres.  Cornelius had no knowledge of Winsome Trust or Andres' business activities in connection with the Trust.

On February 2, 2011, the Receiver filed a Notice of Receivership in the Southern District of Texas, including a copy of the Complaint in the CFTC Action and the Order Appointing Receiver.  On October 3, 2011, Defendants filed a lawsuit against the Receiver in the Southern District of Texas, seeking a declaratory judgment that the Receiver's claim for fraudulent transfer was barred by the statute of limitations.  The Receiver filed a Motion to Dismiss, asserting that the Texas federal court lacked jurisdiction to hear the case.  The Texas federal court granted the Receiver's Motion to Dismiss, and the Receiver filed the instant action in the District of Utah.

## DISCUSSION

### Defendants' Motion to Dismiss

Defendants move to dismiss pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. Defendants' Motion to Dismiss raises the following issues: (1) whether the Receiver's action is beyond the scope of the CFTC's main action; (2) whether the Receiver has standing to maintain the action; (3) whether there is personal jurisdiction over Defendants in this District; (4) whether the Receiver's claim is barred by the statute of limitations; (4) whether the Receiver's Complaint adequately pleads a cause of action for fraudulent transfer; and (5) whether venue in this District is proper.

///

///

3

### I.  Rule 12(b)(1) Subject Matter Jurisdiction

#### A.  Propriety of Receivership

Defendants argue that the jurisdiction granted to the court in the CFTC Action pursuant to 7 U.S.C. § 13a-1 does not permit the exercise of the ancillary jurisdiction exercised by the Receiver in this action.  Defendants argue that 7 U.S.C. § 13a-1 provides the jurisdictional basis for the main action and provides for enforcement by civil penalty and other relief to enforce compliance with the law, but does not provide for relief for defrauded investors.  Rather, Defendants assert that relief for investors must come from 7 U.S.C. § 13a-2, which authorizes the state attorneys general to pursue damage actions on behalf of the residents of their respective states, and 7 U.S.C. § 25, which provides for private actions for actual and exemplary damages.  Therefore, Defendants contend that it was inappropriate in the CFTC Action for Judge Jenkins to appoint a receiver to benefit defrauded investors and the receivership over US Ventures, Winsome Investment Trust, and Andres' assets cannot be characterized as appropriate equitable relief granted to secure the relief sought by the CFTC.

As an initial matter, Defendants may not collaterally attack the Receiver's appointment in this action.  *Grant v. A.B. Leach & Co.*, 280 U.S. 351, 359 (1930) ("And even if the order appointing the receiver was erroneous and might have been vacated in part on a direct attack, . . . plainly the validity of the appointment could not have been questioned by a collateral attack in another court.").  Defendants also lack standing to challenge the appointment of the Receiver because they fail to satisfy the redressability requirement.  The CFTC, which has a stake in the appointment of the receiver, is not a party to this lawsuit.  Defendants also fail to meet the prudential requirements of standing because they are attempting to litigate the rights of third

4

parties, namely the defendants in the CFTC Action.

Moreover, Defendants' position that Judge Jenkins acted improperly in appointing the Receiver is a misreading of the Commodity Exchange Act ("CEA").  The CEA allows for the appointment of a receiver, and this court has subject matter jurisdiction over this case because it is ancillary to the CFTC Action. 7 U.S.C. § 13a-1(a) provides that no ex parte restraining order can be issued, "other than . . . an order appointing a temporary receiver to administer such restraining order and to perform such other duties as the court may consider appropriate."  The appointment of a receiver by ex parte application is specifically allowed by the statute and, as such, is common occurrence in CFTC injunction actions.

Given the CEA's language that the court may order the receiver to "perform such other duties as the court may consider appropriate," Judge Jenkins, in the Order Appointing Receiver, directed and authorized the Receiver to "[t]ake exclusive custody, control, and possession of all the funds, property, mail or any other communication and other assets of, in the possession of, or under the control of Defendants, wherever situated."  In addition, the Order Appointing Receiver provided that the "Receiver shall have full power to sue for, collect, receive and take possession of all goods, chattels, rights, credits, moneys, effects, land, leases, books, records, work papers and records of accounting, including computer-maintained information and other payers and documents" of the Defendants.  The Receiver was further authorized to "[i]nitiate, defend, compromise, adjust, intervene in, dispose of or become a party to any action or proceedings in state, federal or foreign court necessary to preserve or increase the assets of the Defendants, to carry out his or her duties pursuant to this Order to recover payments made improperly by the Defendants or entities in receivership."

5

Judge Jenkins Order Appointing Receiver is within the authority provided for in the CEA, and the Receiver's actions in bringing the present lawsuit against Defendants is within the Receiver's powers granted in the Order Appointing Receiver.

Defendants improperly assert that the CFTC cannot seek restitution or disgorgement directly in an enforcement action. But it is well-established that where a district court has jurisdiction in equity, the court may impose any equitable remedy, absent a specific statutory limitation. No such limitation exists here. *See, e.g.*, *CFTC v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1344 (11th Cir. 2008) ("[T]he unqualified grant of statutory authority to issue an injunction under [Section 6c(a)] carries with it the full range of equitable remedies, among which is the power to grant restitution."); *CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 193 (4th Cir. 2002) ("It is well settled that equitable remedies such as disgorgement are available to remedy violations of the CEA."). Section 6c(a) of the CEA authorizes the CFTC to bring an action in a federal district court when it appears that a person is violating the CEA. The same section authorizes the court to enjoin such act and seek appointment of a receiver to administer the restraining order and to perform such other duties as the court may consider appropriate. *See CFTC v. Brockbank*, 505 F. Supp. 2d 1169, 1173 (D. Utah 2007) (The CEA . . . makes three forms of relief available . . A permanent injunction prohibiting further violations of the Act, ancillary equitable relief in the form of restitution and disgorgement, and civil monetary penalties. . . . The purpose of restitution is to restore the status quo and order the return of that which rightfully belongs to the investors.")

The court finds that Defendants' subject matter jurisdiction arguments are unavailing. Judge Jenkins acted pursuant to the authority granted to district courts under the CEA. His Order

6

Appointing Receiver gives the Receiver the authority to bring this ancillary action to collect a potentially fraudulent transfer.  Judge Jenkins has twice reappointed the Receiver in the CFTC Action, and such actions are appropriate under the CEA.  Therefore, the court concludes that there is no basis for dismissing this case for lack of subject matter jurisdiction.

### B.  Standing

Assuming the propriety of the receivership, Defendants next argue that the Receiver's standing to sue Defendants is also a threshold jurisdictional issue.  Defendants contend that there is a standing problem in that "Winsome Trust" has no legal existence and is legally identical with Andres, its Trustee.  Under Texas law a trust is not a legal entity and legal proceedings must be directed at the trustee.  As such, Defendants claim that an equity receiver for Andres and "Winsome Trust" may only sue for claims benefitting Andres, the Trustee and may not bring claims alleging that Andres himself made fraudulent transfers of the property of Winsome Trust.

The Receiver argues that Defendants incorrectly assumes that the Receiver has no right to pursue claims on Winsome's behalf because it is an unincorporated investment trust.  Under Rule 17(b) of the Federal Rules of Civil Procedure, an unincorporated association may sue and be sued.  In addition, the Receiver contends that Defendants incorrectly allege that Winsome has no separate identity from Andres.

In *Johnson v. Chilcott*, 599 F. Supp. 224 (D. Colo. 1984), the defendants challenged whether the receiver could pursue claims on behalf of the Ponzi scheme operator's investment fund.  *Id.* at 225.  The court found the fund to have an independent corporate existence based on the contract between the fund and the investors, which acknowledged the fund's existence.

In this case, the Receiver is bringing claims for Winsome, and entity that existed

separately and apart from Andres.  The joint venture agreements between Winsome and the investors acknowledged that Winsome was a party to the contract.  The investors agreed to participate in investments in Winsome's discretion and according to Winsome's knowledge.  Winsome had several bank accounts in its own name and its own website.  Therefore, Winsome has its own corporate existence distinct from Andres.

The relevant transfer to Defendants in this case came from a Winsome bank account even if it was Andres, the Trustee of Winsome, that personally made the transfer happen.  Even if Winsome did not have an existence separate from Andres, the Receiver is appointed as the receiver for both Winsome and the assets of Andres.  In that role, the Receiver clearly has standing to bring a claim for Winsome, its trustee, and/or the assets of Andres.   Accordingly, the court finds no grounds for concluding that the Receiver lacks standing to bring the instant action.

## II.  Rule 12(b)(2) Personal Jurisdiction

Defendants further argue that 28 U.S.C. § 754 and 28 U.S.C. § 1692 do not grant the Receiver nationwide service of process and there is no personal jurisdiction over Defendants in this District.  Defendants claim that *Haile v. Henderson Nat'l Bank*, 657 F.2d 816 (6th Cir. 1981), which holds that the statutes grant nationwide service of process, is wrongly decided.  This court has previously followed *Haile* as has another court in this District.  *See Wing v. Apex Holding Co.,* 2009 WL 2843343, at *3 (D. Utah August 27, 2009) (Benson, J.) ("Read together, these Federal receiver statutes confer nationwide service of process."); *Wing v. Storms*, 2004 WL 724448, at *3 (D. Utah Feb. 5, 2004) (Kimball, J.).

Defendants rely on *Gilchrist v. General Elec. Captial Corp.*, 262 F.3d 295, 300-01 (4th Cir. 2001), which found that 28 U.S.C. § 754 provides only in rem jurisdiction over property.

8

Defendants state that while *Gilchrist* does not mention 28 U.S.C. § 1692, that statute allows only for service of process as to property, not persons.   However, the *Gilchrist* court "did not consider (nor was it briefed or argued) whether Section 1692 would provide such a congressional grant of personal jurisdiction (as has been held by each of the cases cited above)." *Quilling v. Grand Street Trust*, 2005 WL 1983879 at *4 (W.D.N.C. Aug. 12, 2005) (unpublished).   "Instead, the Court expressly refused to rule on the issue of personal jurisdiction as it had not properly been raised by the parties." *Id.*   Moreover, the passage from *Gilchrist* on which Defendants rely, provides limited guidance in this case because it is discussing the effect of a stay issued by the receivership on parties in a bankruptcy action that had not been served in the receivership action. *Id.* at 301.

Defendants also argue that the court should not conclude that there is nationwide service of process in this case because the Supreme Court has held that the CEA did not provide nationwide service of process in private rights of action under the CEA.   *Omni Capital Int'l v. Rudolf Wolff Co.* , 484 U.S. 97, 106 (1987).   Based on that ruling, Defendant contend that it would be inconsistent to allow for nationwide service of process in receivership actions when it does not provide for it in private actions.   However, there are several differences between a receivership action and a private right of action and the provisions of the CEA governing each type of case differ.

Therefore, the court again adopts the reasoning of *Haile* and concludes that 28 U.S.C. §§ 754 and 1692 confer nationwide service of process in receivership actions.   In Haile, the Sixth Circuit has recognized that district courts may exercise personal jurisdiction over defendants who reside in other districts in receivership actions as long as the receiver timely files notice of

receivership, pursuant to Section 754, in the districts where the defendants reside.  *Haile v. Henderson Nat'l Bank*, 657 F.2d 816 (6th Cir. 1981).   In this case, the Receiver filed a Notice of Receivership with the Southern District of Texas, including a copy of the CFTC Complaint and the Order Appointing Receiver.  After this lawsuit was filed, the Receiver served Defendants with a copy of the Summons and Complaint.  Therefore, Defendants have received proper notice of this lawsuit under controlling law and the first element of establishing personal jurisdiction is met.

The next issue for establishing personal jurisdiction in this case is a determination of whether exercising jurisdiction over Defendants comports with the Fifth Amendment's requirement that there be a sufficient relationship between the defendant and the forum.  "[I]n a federal question case where jurisdiction is invoked based on nationwide service of process, the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant."  *Peay v. Bellsouth Medical Assistance Plan*, 205 F.3d 1206, 1212 (10th Cir. 2000).

In *Peay*, the Tenth Circuit set out the standard for determining whether due process is met in a nationwide service of process case:

> [I]n evaluating whether the defendant has met his burden of establishing constitutionally significant inconvenience, courts should consider the following factors: (1) the extent of the defendant's contacts with the place where the action was filed; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business; (3) judicial economy; (4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence or place of business; and (5) the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business.

205 F.3d at 1212-13 (citations omitted).  The court also emphasized that "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern."  *Id.* at 1213.  This

standard varies from the requirements of personal jurisdiction under Utah law and the Fourteenth

Amendment.  Under this standard, a defendant must first demonstrate that his liberty interests

actually have been infringed and that the exercise of jurisdiction in the chosen forum will make

litigation so gravely difficult and inconvenient that he is unfairly at a severe disadvantage in

comparison to his opponent.  *Id.*

Because Defendants argue that there is no nationwide service of process, they do not

engage in the *Peay* analysis.  Rather, Defendants focus solely on their lack of contacts with Utah.

The Receiver admits that Defendants appear to have no contacts with Utah.  However, the

Receiver argues that an analysis of the remaining *Peay* factors weighs in favor of exercising

jurisdiction.

Significantly, Defendants have not established how they would be inconvenienced by

litigating in this forum.  Defendants are attorneys who routinely practice in other states, as is

demonstrated by the facts of this case in which they provided representation to Carter in New

Hampshire.  Defendants have already retained an attorney in Texas and local counsel in Utah.

*Peay*, 205 F.3d at 1212 (citing "defendant's access to counsel" as factor in convenience analysis).

In addition, as this court has recognized in other receivership actions, "[j]udicial economy would

be promoted by maintaining this litigation in Utah because it is an ancillary proceeding" to the

CFTC Action in this District.  *Wing v. Storms*, 2004 WL 724448, at *3 (D. Utah Feb. 5, 2004)

(Kimball, J.).  The various lawsuits brought by the Receiver would require litigation in scores of

federal district courts, drastically increasing the judicial resources required to prosecute the

receivership.  Therefore, the judicial economy factor weighs heavily in favor of finding personal

jurisdiction.

11

The remaining *Peay* factors also support a finding of personal jurisdiction over Defendants. All of the records for the companies in receivership are now located in Utah. Moreover, discovery can be conducted in large part by electronic means. The Receiver is also willing to travel to Texas to depose Defendants. Finally, the last consideration looks to the "nature of the regulated activity." The regulated activity in question is the administration of the receivership, which "by its nature, involves the resolution, in one centralized forum, of competing claims and interests arising from activities which may have occurred throughout the United States." *In re Harwell*, 381 B.R. 885, 890 (Bankr. D. Colo. 2008). Defendants have not met their burden in demonstrating that litigating this case in Utah would be gravely difficult.

Even if the Defendants had shown that their lack of contacts with Utah would make litigating this case gravely difficult, Tenth Circuit precedent states that the court may still exercise personal jurisdiction over Defendants if "the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant." *Peay*, 204 F.3d at 1213. The burdens in this case, which involves a lawyer and his law firm who represent others with equally distant districts, are relatively minimal and are outweighed by the federal interest in resolving all of these receivership disputes in a single district. The Receiver has filed 89 lawsuits. If the Receiver was required to litigate each lawsuit in the respective home districts of each Defendant, he would waste receivership assets in funding long-distance litigation. The purpose of an equity receivership is to return as much of the funds to innocent investors as possible. If costs were expended for local counsel in each district, some cases could not go forward and the value of the receivership would be questionable. Accordingly, the court concludes that the exercise of jurisdiction over Defendants in the District of Utah comports with

12

the Fifth Amendment.  Accordingly, Defendants' motion to dismiss on this ground is denied.

### III.  Rule 12(b)(6)

#### A.  Sufficiency of Fraudulent Transfer Claim

Defendants argue that the Receiver's Complaint does not sufficiently state a plausible fraudulent transfer claim under the Texas Uniform Fraudulent Transfer Act.  Defendants assert that the payments to Defendants for Carter's defense, $90,000, were but a small fraction of the allegedly fraudulent transfers paid to Carter.  In addition, Defendants contend that, at the time the payments were made to Defendants, Andres controlled millions of dollars of investment money in his Ponzi scheme.  Moreover, Defendants argue that Receiver fails to allege in the Complaint that any creditors were after Andres or how payment for Carter's legal defense would hinder, delay, or defraud creditors.

The Receiver argues that the Complaint states a cause of action for actual and constructive fraudulent transfer under the Uniform Fraudulent Transfer Act ("UFTA"), adopted by both Utah and Texas.  For actual fraudulent transfers, a plaintiff must allege (1) that the transfer was made (2) with actual intent to hinder, delay, or defraud any creditor.  *See* Utah Code Ann. § 25-6-5(1), Tex. Bus. & Com. Code § 25.005.  To allege a cause of action for constructive fraudulent transfer, a plaintiff must allege that (1) the transfer was made (2) without receiving reasonably equivalent value in exchange for the transfer, and (3) the transferor was insolvent at the time or became insolvent as a result of the transfer.  Utah Code Ann. § 25-6-6; Tex. Bus. & Com. Code § 25.006.

The Complaint adequately alleges both causes of action.  At this stage of the litigation, the court must accept the allegations in the Complaint as true.  The Complaint alleges that

Winsome operated as a Ponzi scheme and all payments made by Winsome are assumed to be fraudulent.  The Complaint also alleges that Winsome became insolvent as early as November 2005, well before the payments made to Defendants in September 2006 and July 2007. Moreover, Defendants' claims that the transfers were made for legitimate business activities are inappropriate at the motion to dismiss stage and largely irrelevant if the Ponzi scheme presumption is applied.  Under the UFTA, "a debtor's actual intent to hinder, delay, or defraud is conclusively established by proving that the debtor operated as a Ponzi scheme." *S.E.C. v. Madison Real Estate Group, LLC,*, 647 F. Supp. 2d 1271, 1279 (D. Utah 2009) (Waddoups, J.). The court finds no grounds for dismissing the fraudulent transfer claim at this stage of the litigation.

### B.  Timeliness of Claim

In addition, Defendants argue that the fraudulent transfer claim is untimely because the Receiver commenced this action after the four-year statute of repose in Texas Bus. & Com. Code § 24.010.  Defendants claim that the statute is a statute of repose, not a statute of limitations, and that, while the substantive right created by the statute of repose is subject to tolling, the statute is strictly construed and the Receiver must prove that the transfer was inherently undiscoverable. Defendants also argue that the defrauded investors were well aware of Andres' fraud and were in contact with the CFTC before the CFTC Action was filed and the claim was extinguished by the statute of repose.  The Receiver argues that under Texas or Utah law, which have both adopted the UFTA, the actual fraudulent transfer claim is preserved by the statutory one-year discovery rule and the doctrine of adverse domination applies.

The UFTA states that an actually fraudulent transfer claim is "extinguished" if not

14

brought "within four years of the allegedly fraudulent transfer or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant."  Texas Bus & Com. Code § 24.010; Utah Code Ann. § 25-6-10(1).   Therefore, the UFTA has a one-year built-in statutory discovery rule.  In *Wing v. Kendrick*, 2009 WL 1362383, at *3 (D. Utah May 1, 2009), the court stated that "the discovery rule generally applies in cases involving Ponzi scheme entities that have been placed in the hands of an equity receiver because the fraudulent nature of the transfers can only be discovered once the Ponzi operator has been removed from the scene."  In *Kendrick*, the court appears to recognize both the statutory discovery rule and the relevance of the adverse domination doctrine in tolling the statute of limitations in a receivership fraudulent transfer action.

The transfers made to Defendants are alleged to have been made with actual fraudulent intent under the Ponzi scheme presumption and may fall within the discovery rule because they were brought within one year of when the Receiver was appointed.  The facts in the Complaint do not plainly reveal that the Receiver discovered or could have reasonably discovered the fraudulent transfers to Defendants more than one year prior to the filing of the Complaint, which would be before he was appointed.  Prior to having access to the entities' records when the receivership was created, there would be no way to guess that a Ponzi scheme investment fund paid for the criminal defense of a third party.  Defendants argue that the investors were aware of Andres fraud generally and contacted the CFTC.  While those concerns led to the filing of the action, there is no basis at this stage of the litigation to rule as a matter of law that the fraudulent transfer at issue was known by the Receiver prior to the Receiver's appointment and his access to Winsome's records.  Therefore, the court cannot rule as a matter of law that the one-year

15

discovery rule does not apply.  Accordingly, the Receiver's UFTA claim survives Defendants' motion to dismiss.

### C.  Constructive Trust

Defendants also argue that a constructive trust is not an appropriate remedy in this case because the funds wired to Defendants have been intermingled with other funds and can no longer be traced.  "[A] constructive trust on unidentifiable cash proceeds is inappropriate." *Meadows v. Biershwale*, 516 S.W.2d 125, 129 (Tex. 1974).   However, the "direct tracing of funds is not an indispensable requisite" for the imposition of a constructive trust.  *Corporation of President of Church of Jesus Christ of Latter-day Saints v. Jolley*, 467 P.2d 984, 985 (Utah 1970).  And, contrary to Defendants representation of Texas law, Texas law provides that "once a party traces funds or shows that funds have been commingled, the constructive trustee must prove what part of the funds used to purchase the properties was his money only, otherwise, the whole fund may be subjected to a constructive trust." *Flournoy v. Wilz*, 201 S.W.3d 833, 836-37 (Tex. Ct. App. 2006).  In both cases cited by Defendants, the court dismissed the claim for constructive trust for failure to identify a res only after trial.  These cases do not provide a basis for dismissing the Receiver's claims at the motion to dismiss stage.

### IV.  28 U.S.C. § 1404(a) Motion to Transfer Venue

Finally, Defendants argue, in the alternative, that the case should be transferred to the Southern District of Texas.  Defendants recognize that they have the burden of demonstrating that such a transfer is appropriate.  Defendants claim that venue should be transferred because the alleged transfer occurred in Texas, the witnesses and evidence are located in that district, the proper state law to apply to this action is Texas law, and the transfer would moot the fundamental

issue of due process.

"For more than five decades . . . [the Tenth Circuit has] required the movant to demonstrate that the balance of factors 'strongly favors' a transfer of venue under Section 1404(a)." *Empr's Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 n.13 (10th CIr. 2010). Unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should not be disturbed. *Id.* at 1167. This court has found that this "general rule is magnified in a receivership action." *Wing v. Apex Holdings*, 2009 WL 2843343 at *9. This District established the receivership and this District has a substantial interest in overseeing the actions brought to recover the assets of the receivership estate. *Wing v. Storms*, 200 WL 724448, at *4. Litigating this case in this District will ensure that the Receiver can most efficiently manage and prosecute his claims. Defendants claim that all the evidence and witnesses are in Texas is conclusory and insufficient. All the documents and records of the receivership entities are in Utah. Andres and Holloway are being criminally prosecuted in Utah. The court, therefore, concludes that there is no compelling reason to transfer this case to Texas.

## CONCLUSION

For the reasons stated above, Defendants William Cornelius and Cornelius & Salhab's "Motion to Dismiss for Lack of Jurisdiction over the Subject Matter, for Lack of Jurisdiction Over the Persons of Defendants, and for Failure to State a Claim Upon Which Relief Can Be Granted, and, in the Alternative, to Transfer for Improper Venue" is DENIED.

///

DATED this 15th day of June, 2012.

                                      BY THE COURT:

                                      _____
                                      DALE A. KIMBALL,
                                      United States District Judge