IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| R. WAYNE KLEIN, as Court Appointed Receiver for U.S. Ventures LC, Winsome Investment Trust, and the Assets of Robert H. Andres and Robert L. Holloway,<br><br>    Plaintiff,<br><br>vs.<br><br>WILLIAM T. CORNELIUS, and CORNELIUS & SAHAB,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:11CV1159DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Plaintiff R. Wayne Klein's ("the Receiver") Motion for Summary Judgment. On October 23, 2013, the court held a hearing on the motion. At the hearing, the Receiver was represented by David C. Castleberry and Defendants were represented by Berry Dunbar Bowen. The court took the motion under advisement. After carefully considering the memoranda and arguments submitted by the parties as well as the law and facts relating to the motion, the court renders the following Memorandum Decision and Order.

## BACKGROUND

On January 24, 2011, the Commodity Futures Trading Commission ("CFTC") initiated a lawsuit in this District against U.S. Ventures, Winsome Investment Trust, Robert J. Andres, and Robert L. Holloway, alleging that the defendants were operating a fraudulent commodity investment program ("CFTC Action"). The CFTC Action is assigned to Judge Bruce Jenkins,

Case No. 2:11-CV-99BSJ.  The CFTC asked the court to appoint a receiver over the affairs of Winsome Investment Trust and US Ventures.  Judge Jenkins appointed R. Wayne Klein as Receiver for U.S. Ventures, Winsome Investment Trust, and the assets of Robert J. Andres and Robert L. Holloway.  The Receiver proceeded to investigate the affairs of Winsome Investment Trust and US Ventures and determined that both companies operated as Ponzi schemes.

In this action, the Receiver seeks to recover funds from Defendants William Cornelius, who is a criminal defense attorney in Texas, and Cornelius' law firm, Cornelius & Salhab.  In 2006, Robert J. Andres referred one of his associates, Jerome Carter, to Cornelius & Salhab for representation in an unrelated criminal matter against Carter in New Hampshire.  Between September 2006 and July 2007, Robert J. Andres wired payment to Cornelius & Salhab for the representation from a bank account in the name of Winsome Trust.  Andres had referred clients to Cornelius on one or two other occasions, but Cornelius had no other relationship with Andres.  Cornelius had no knowledge of Winsome Trust or Andres' business activities in connection with the Trust.

Defendants dispute whether Winsome operated as a fraudulent Ponzi scheme and take issue with whether Winsome had a separate existence from Andres.  However, it is undisputed that Defendants received a total of $89,845.73 in payments from Winsome accounts in direct wire transfers between September 2006 and July 2007.  Defendants provided legal services to Jerome Carter, who had no connection to Winsome other than being a friend of Andres.  While Carter received the benefit of the legal services provided by Defendants, Winsome did not receive any benefit from Carter's legal representation.

# DISCUSSION

## **Motion for Summary Judgment**

The Receiver contends that he is entitled to summary judgment because (1) Winsome Trust operated as a Ponzi scheme, and (2) Defendants did not provide reasonably equivalent value to Winsome for the transfers they received from Winsome. Under the Uniform Fraudulent Transfers Act ("UFTA"), a transfer is avoidable if it was made with actual intent to defraud and it was not made in exchange for reasonably equivalent value. The issues, therefore, are whether Winsome operated as a Ponzi scheme, whether Defendants received transfers from Winsome, and whether Defendants provided reasonably equivalent value to Winsome in exchange for the transfers.

Rather than contest the issues presented by the Receiver's motion, Defendants re-argue two issues that the court already considered and rejected in connection with Defendants' previous motion to dismiss. First, Defendants contend that as a trust, Winsome has no separate existence and cannot take any action on its own. The court has already determined that Winsome has a separate existence. Moreover, the issue is irrelevant because the Receiver is the Receiver over the assets of Winsome and Andres. Even assuming that Defendants are right and the transfers came from Andres instead of Winsome, liability still attaches because Andres operated the Winsome Ponzi scheme.

Second, Defendants again contend that the statute of limitations or statute of repose on the Receiver's claims have expired. Defendants ignore the court's earlier decision that pursuant to the discovery rule within the UFTA, the Receiver's claims are timely. Defendants provide no argument that would make the court re-examine its prior analysis on this issue.

In rehashing both of these arguments from the motion to dismiss, Defendants cite no new law, raise no new arguments, and present no new evidence for the court to consider. Nothing has changed since the court's ruling on the motion to dismiss. Defendants have merely regurgitated their old brief for the court's reconsideration. The court finds no basis for reversing its prior rulings.

**A. Fraudulent Transfer Claim**

    **1. Ponzi Scheme**

First, the Receiver argues that Winsome made the transfers to Defendants with actual intent to defraud because it operated as a Ponzi scheme. "Courts have routinely applied UFTA to allow receivers to recover monies lost by Ponzi scheme investors." *Donnell v. Kowell*, 533 F.3d 762, 767 (9th Cir. 2008). Significantly, courts recognize that the "mere existence of a Ponzi scheme is sufficient to establish actual intent to defraud." under the UFTA. *Id.*

Case law has defined a Ponzi scheme as "a fraudulent investment scheme in which money contributed by later investors generates artificially high dividends for the original investors, whose example attracts even larger investments." *State v. Bolson*, 2007 UT App 268, ¶ 4, 167 P.3d 539. In this case, although the parties dispute whether Winsome operated as a Ponzi scheme, the evidence demonstrates that it did. The Receiver has submitted evidence establishing that Winsome was insolvent throughout its operations, including when it made the transfers at issue to Defendants. Winsome used funds received from investors to pay fraudulent distributions to other investors, a typical practice of a Ponzi scheme. As a result, every transfer Winsome made was with actual intent to defraud. Defendants do not cite to any record evidence to rebut the Receiver's evidence of a Ponzi scheme.

In addition, a transfer is constructively fraudulent if the debtor did not receive reasonably equivalent value in exchange for the transfer and made the transfer while insolvent. *See* Utah Code Ann. § 25-5-6(a)(2). Proof of a Ponzi scheme also establishes constructive fraud because it demonstrates that the debtor "intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due." *Donnell*, 533 F.3d at 770.

The Receiver has established the elements of constructive fraud in this case. Winsome was insolvent throughout its operation. It had no ability to pay its debts as they became due except by fraudulently soliciting new funds to pay earlier investors. The fact that Winsome operated as a Ponzi scheme demonstrates that it intended to incur debts beyond its ability to pay. Defendants do not claim to have provided reasonably equivalent value to Winsome in exchange for the transfers, but claim only to have provided legal services to a third party. Therefore, it is undisputed that the transfers at issue were constructively fraudulent and should be avoided.

**2. Reasonably Equivalent Value**

Furthermore, the Receiver argues that Defendants did not take the transfers at issue in good faith or for reasonably equivalent value. Demonstrating that a transfer was received in good faith and for reasonably equivalent value is an affirmative defense and the burden is on Defendants to prove both of these elements. *Terry v. June* 432 F. Supp. 2d 635, 641-42 (W.D. Va. 2006); *Wing v. Holder*, 2010 WL 5021087, *2-3 (D. Utah Dec. 3, 2010); *Wing v. Apex Holding Co.*, 2009 WL 2843343, *5 (D. Utah Aug. 27, 2009).

The question of whether Winsome received reasonably equivalent value for its payments to Defendants must be answered from the perspective of the tort creditors of Winsome, its

defrauded creditors. In other words, the question is not whether Defendants "gave reasonably equivalent value; it is whether [Winsome] received reasonably equivalent value." *In re Lucas Dallas, Inc.*, 185 B.R. 801, 807 (9th Cir. 1995).

In this case, Winsome did not receive reasonably equivalent value for its transfers to Defendants. Only Carter received a benefit from Defendants' legal services. Winsome had no connection to the legal proceedings against Carter. Moreover, no benefit purportedly provided to Carter can satisfy Defendants' obligation of demonstrating that they provided reasonably equivalent value to Winsome. Courts have held that "[s]atisfaction of an obligation owed the transferee by a third party does not qualify as fair consideration" under UFTA. *Dahnken Inc. v. Wilmarth*, 726 P.2d 420, 422 (Utah 1986).

In *S.E.C. v. Resource Development International*, 487 F.3d 295, 301 (5th Cir. 2007), the Fifth Circuit Court of Appeals held that payments made to the attorneys of the individual who operated a Ponzi scheme were not made for reasonably equivalent value. In that case, the defendant agreed to pay an individual who was operating a Ponzi scheme $60,000 for attorney fees related to an SEC lawsuit against the individual. *Id.* at 298. The SEC then sued the defendant to recover that transfer from the Ponzi entity under the UFTA. *Id.* The Fifth Circuit held that because the transfer was made by a Ponzi scheme, fraudulent intent was established, and the Ponzi entity in receivership received no reasonably equivalent value based on the payment made for the legal fees of one of the Ponzi scheme's organizers. *Id.*

In this District, Magistrate Judge Pead recently granted the Receiver's motion for summary judgment in proceedings brought against another law firm that had provided services to an associate of Andres' and whose legal fees were paid by Winsome. *Klein v. King & King &*

*Jones*, Case No. 2:12cv51DBP, Docket No. 30, July 22, 2013. This case presents that exact same circumstances the court faced in that case.

Here, Defendants cannot show that the legal services they provided to Carter resulted in any value received by Winsome. Defendants do not assert that Carter had any relationship with Winsome that would obligate Winsome to pay his criminal defense fees. Nor do they argue that Winsome received any benefit from their legal services. Therefore, Defendants cannot prove the "good faith" affirmative defense. Accordingly, the Receiver is entitled to summary judgment against Defendants on his fraudulent transfer claim in the amount of $89,845.73 plus applicable costs, fees, and interest.[1]

**B. Motion to Consolidate**

Although they did not formally file a motion to consolidate, Defendants assert that this case must be consolidated with both the main CFTC enforcement action and the Receiver's action against Jerome Carter. Defendants argue that the judge who appointed the Receiver must be availed to consider the scope of subject matter jurisdiction of the Receiver's ancillary actions in an enforcement action. Second, Defendants contend that the claim against Carter cannot be allowed to proceed independently because it could result in double recovery or inconsistent results.

Defendants' "motion" is procedurally improper. Local Rule 7-1 states that "[n]o motion, including but not limited to cross-motions and motions pursuant to Fed. R. Civ. P. 56(d), may be included in a response or reply memorandum. Such motions must be made in a separate

---

[1] Because of its ruling on the Receiver's fraudulent transfer claim, the court need not address the Receiver's alternative unjust enrichment claim.

document." DUCivR 7-1(b)(1)(A). Furthermore, the motion was filed in the highest-numbered case instead of the lowest-numbered case. DUCivR 42-1.

Nevertheless, the motion to consolidate also fails on the merits. The enforcement action filed by the CFTC and the lawsuit filed by the Receiver against Carter are not substantially the same. The CFTC's action involves various claims under the Commodity Exchange Act and there is no need for the judge in the enforcement action to consider each ancillary action brought by the Receiver. In addition, the Receiver's action against Carter is closed. Carter was served by publication because the Receiver could not find him, Carter never responded to the Complaint, and the Receiver obtained default judgment against him. Therefore, there is no risk of injustice, double recovery, inconsistent results, or duplication of effort. Accordingly, the court denies Defendants' request to consolidate the actions.

## CONCLUSION

For the reasons stated above, the Receiver's Motion for Summary Judgment is GRANTED. The Clerk of Court is directed to enter judgment in favor of the Receiver and against Defendants in the amount of $89,845.73 plus applicable costs, fees, and interest.

DATED this 13th day of November, 2013.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge